HEATHER E. WILLIAMS, CA Bar #122664
Federal Defender
LISA N. LUMEYA, DC Bar #90017392
Assistant Federal Defender
Office of the Federal Defender
2300 Tulare Street, Suite 330
Fresno, CA 93721-2226
Telephone: (559) 487-5561
Fax: (559) 487-5950

Counsel for Defendant
GAVIN ANDERSON

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>vs.<br>GAVIN ANDERSON,<br>Defendant. | Case No. 6:25-po-00452-HBK<br>**NOTICE OF MOTION AND MOTION TO DISQUALIFY NATIONAL PARK SERVICE**<br>Date: August 11, 2026<br>Judge: Hon. Helena Barch-Kuchta |

**TO: COUNSEL FOR PLAINTIFF; UNITED STATES ATTORNEY, ERIC GRANT, ASSISTANT UNITED STATES ATTORNEY, JOSHUA BANISTER, ACTING YOSEMITE LAW ENFORCEMENT SPECIALIST, BRIANA VOLLMER:**

**PLEASE TAKE NOTICE** that on August 11, 2026, or as soon thereafter as this matter can be heard, in the Eastern District of California, before the Honorable Magistrate Judge Helena Barch-Kuchta, Defendant Gavin Anderson, through undersigned counsel, will bring on for hearing the following Motion to Disqualify the National Park Service.

**MOTION**

Mr. Anderson, by and through his counsel of record, Assistant Federal Defender Lisa N. Lumeya, hereby moves this Court for an order disqualifying the National Park Service from further prosecutorial action in the instant case under the Court's supervisory power. This motion is made

pursuant to Federal Rule of Criminal Procedure 12, 47, Eastern District of California Local Rule Crim. 430.1, and such other statutory and constitutional rules as may be applicable.

This motion is based upon the instant motion and notice of motion, the accompanying memorandum of points and authorities, the files and records in the above-entitled case, and any and all other information that may be brought to the Court's attention before or during the hearing on this motion.

Respectfully submitted,

HEATHER E. WILLIAMS
Federal Defender

Date: July 28, 2026

*<u>/s/ Lisa Ndembu Lumeya</u>*
LISA N. LUMEYA
Assistant Federal Defender
Counsel for Defendant
GAVIN ANDERSON

## TABLE OF CONTENTS

**PAGE**


I. INTRODUCTION ........................................................................................1

II. STATEMENT OF ISSUES ..........................................................................1

III. BACKGROUND ........................................................................................3

A. Procedural History ..................................................................................2

B. Legal Background ....................................................................................3

IV. LEGAL STANDARD....................................................................................5

V. ARGUMENT ..............................................................................................6

A. The United States Unlawfully Delegated its Prosecutorial Authority to Active Law Enforcement Rangers in Violation of 28 U.S.C. § 516, Rendering Any Prosecutorial Conduct Taken by the NPS *Ultra Vires*. ...........7

1. The DOJ is Required by Statute to Litigate on Behalf of the United States. ..........................................................................7

2. The Department of the Interior May Empower the NPS to Exercise Police Powers—Not Prosecutorial Powers—on its Behalf. ..................................10

3. The Local Rules Cannot Authorize the United States to Delegate its Prosecutorial Authority to NPS. ..........................................................10

4. Upholding a System of Police Prosecution Contravenes Foundational Principles of Fairness and Distorts the Appearance of Justice. .................13

B. A Law Enforcement Ranger is Not a Federal Prosecutor. ..............................14

1. The Presumption of Regularity Does Not Apply to a Law Enforcement Ranger..........................................................................14

2. A System of Police Prosecution is Devoid of the Safeguards Underpinning the Foundational Structure of Criminal Law......................15

C. This Court Should Exercise Its Supervisory Power to Remedy the Government's Unlawful Delegation by Disqualifying the NPS. ...................22

VI. CONCLUSION..........................................................................................23

## TABLE OF AUTHORITIES

PAGE

### FEDERAL CASES

*ABS Entertainment, Inc. v. CBS Corporation*
908 F.3d 405 (9th Cir. 2018) ....................11

*BedRoc Ltd., LLC v. United States*
541 U.S. 176 (2004)....................5

*Berger v. United States*
295 U.S. 78 (1935)....................14

*Bordenkircher v. Hayes*
434 U.S. 357 (1978)....................15

*Certain Underwriters at Lloyd's London v. Argonaut Ins. Co.*
264 F. Supp. 2d 914 (N.D. Cal. 2003) ....................5

*Connell v. Lima Corp.*
988 F.3d 1089 (9th Cir. 2021) ....................7

*Frazier v. Heebe*
482 U.S. 641 (1987)....................3, 5, 11, 13

*Freeman v. Chicago Musical Instrument Co.*
689 F.2d 715 (7th Cir. 1982) ....................5

*Holbrook v. Flynn*
475 U.S. 560 (1986)....................17

*In re Persico*
522 F.2d 41 (2d Cir. 1975)....................8

*Johnson v. United States*
333 U.S. 10 (1948)....................17

*Jones v. Niagra Frontier Transp. Auth.*
722 F.2d 20 (2d Cir. 1983)....................20

*Kirby v. Illinois*
406 U.S. 682 (1972)....................16

*Lamie v. U.S. Tr.*
540 U.S. 526 (2004)....................7

## TABLE OF AUTHORITIES (Cont'd)

**PAGE**

### FEDERAL CASES (Cont'd)

*Laws for Fair Reciprocal Admission v. United States*
141 F.4th 1056 (9th Cir. 2025) .......... 4

*Leonard v. U.S. Postal Service*
489 F.2d 814 (1st Cir. 1974) .......... 8

*Offutt v. United States*
348 U.S. 11 (1954) .......... 22

*Ortega-Mendez v. Gonzales*
450 F.3d 1010 (9th Cir. 2006) .......... 16

*Perrin v. United States*
444 U.S. 37 (1979) .......... 5

*Snyder v. United States*
603 U.S. 1 (2024) .......... 8

*United States v. Armstrong*
517 U.S. 456 (1996) .......... 6

*United States v. Baldwin*
541 F. Supp. 2d 1184 (D.N.M. 2008) .......... 8

*United States v. Banuelos-Rodriguez*
215 F.3d 969 (9th Cir. 2000) .......... 14

*United States v. Batchler*
No. 2:16-cr-00292, 2017 WL 1745025 (D. Nev. May 2, 2017) .......... 20

*United States v. Bowen*
799 F.3d 336 (5th Cir. 2015) .......... 14

*United States v. Brown*
42 F.4th 1142 (9th Cir. 2022) .......... 5

*United States v. Davis*
793 F.3d 712 (7th Cir. 2015) (en banc) .......... 15

*United States v. Edwards*
154 F.3d 915 (9th Cir. 1998) .......... 15

## TABLE OF AUTHORITIES (Cont'd)

**PAGE**

### FEDERAL CASES (Cont'd)

*United States v. Foster*
985 F.2d 466 (9th Cir. 1993) ....................21

*United States v. Giraud*
160 F.4th 390 (3d Cir. 2025) ....................22

*United States v. Johnston*
690 F.2d 638 (7th Cir. 1982) ....................15

*United States v. Kojayan*
8 F.3d 1315 (9th Cir. 1993) ....................21

*United States v. Libby*
429 F. Supp. 3d 27 (D.D.C. 2006) ....................9

*United States v. Lopez-Avila*
678 F.3d 955 (9th Cir. 2012) ....................21

*United States v. Marsh*
No. 1:24-mj-00092-HBK, 2024 WL 4667801 (E.D. Cal. Nov. 4, 2024) ....................11, 18

*United States v. Nishiie*
996 F.3d 1013 (9th Cir. 2021) ....................5

*United States v. Plascencia-Orozco*
852 F.3d 910 (9th Cir. 2017) ....................5

*United States v. Prantil*
764 F.2d 548 (9th Cir. 1985) ....................20

*United States v. Robinson*
967 F.2d 287 (9th Cir. 1992) ....................16

*United States v. Sellers*
906 F.3d 848 (9th Cir. 2018) ....................14, 15, 17

*United States v. Urutyan*
564 F.3d 679 (4th Cir. 2009) ....................6

*United States v. Washington*
869 F.3d 193 (3d Cir. 217)....................15

## TABLE OF AUTHORITIES (Cont'd)

**PAGE**

### FEDERAL CASES (Cont'd)

*United States ex rel. Schwartz v. TRW Inc.*
118 F. Supp. 2d 991 (C.D. Cal. 2000) ....................20

*Wayte v. United States*
470 U.S. 598 (1985)....................16

*Wheat v. United States*
486 U.S. 153 (1988)....................6

*Young v. United States ex rel. Vuitton*
481 U.S. 787 (1987)....................16

### CONSTITUTIONAL PROVISIONS AND STATUTES

United States Constitution
Art. II, Sec. 3....................6

United States Code
26 U.S.C. § 7452....................8
28 U.S.C. § 501 *et seq*....................6
28 U.S.C. § 510....................9
28 U.S.C. § 515....................9
28 U.S.C. § 516.................... *passim*
28 U.S.C. § 519....................8
28 U.S.C. § 530B....................19
28 U.S.C. § 530C....................21
28 U.S.C. § 543....................9
28 U.S.C. § 547....................8, 10
28 U.S.C. § 2071 *et seq*....................3, 4, 11
28 U.S.C. § 2072....................3
54 U.S.C. § 102701....................10, 14

## TABLE OF AUTHORITIES (Cont'd)

**PAGE**

### FEDERAL COURT RULES

Federal Rules of Criminal Procedure
12 ... 5
16 ... 18
58 ... 11

Eastern District of California Local Rules
180 ... *passim*
181 ... 4, 19
182 ... 3, 4
183 ... 4
184 ... 4
430.1 ... 2, 11

### EXECUTIVE AND AGENCY MATERIALS

Fighting Overcriminalization in Federal Regulations
Exec. Order No. 14294, 90 Fed. Reg 20363 (May 14, 2025) ... 16

Department of the Interior, National Park Service Law Enforcement Ranger Program *Available at* https://www.doi.gov/oles/national-park-service-law-enforcement-ranger-program ... 14

Office of Legal Counsel, *Detailing Attorneys to the Department of Justice to Serve as Immigration Judges and Special Assistant United States Attorneys*
49 Op. O.L.C. __ (Oct. 23, 2025), 2025 WL 3251684 ... 9

### MISCELLANEOUS

Case Documents
Defendant's Motion, *United States v. Gearheart*
6:23-mj-00006-HBK, ECF No. 63 (E.D. Cal. Mar. 5, 2025) ... 18

Defendant's Reply, *United States v. Marsh*
1:24-mj-00092-HBK, ECF No. 16 (E.D. Cal. Sept. 27, 2024) ... 18

Defendant's Reply, *United States v. O'Brien*
6:25-mj-00015-HBK, ECF No. 17 (E.D. Cal. June 17, 2026) ... 18

Trial Audio, *United States v. O'Brien*
6:25-mj-00015-HBK, ECF No. 25 (E.D. Cal. June 29, 2026) ... 11

## TABLE OF AUTHORITIES (Cont'd)

**PAGE**

### MISCELLANEOUS (Cont'd)

American Bar Association Model Rules of Professional Conduct
Model Rule 1.1 (Competence) ..... 20
Model Rule 3.7 (Lawyer as Witness) ..... 20
Model Rule 3.8 (Special Responsibilities of a Prosecutor) ..... 20

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

In the early summer evening of May 10, 2025, Gavin Anderson was driving in Yosemite National Park while visiting the sights with his significant other. As he drove in an area known as Devil's Elbow, a National Park Service ranger driving in front of him came to a sudden stop to avoid previously unseen pedestrians. Mr. Anderson was unable to stop in time to avoid the ranger's patrol vehicle. Three additional rangers soon reported to prepare an accident report. The rangers concluded Mr. Anderson was not impaired following his consent to their Advanced Roadside Impaired Driving Enforcement tests. Afterward, they conducted a warrantless search of his vehicle. After about two hours, the rangers released the visiting couple with a total of three mandatory citations charging various misdemeanor offenses.

As Mr. Anderson prepared to navigate criminal court for the first time, he believed he understood the basics: a prosecuting attorney presents evidence through law enforcement witnesses, and a defense attorney challenges that evidence. Here, however, active law enforcement rangers within the National Park Service have been authorized to both investigate *and* prosecute the case against Mr. Anderson. The government interprets a local rule as supporting its ability to delegate prosecutorial responsibilities, but Congress requires the Department of Justice to conduct litigation on behalf of the United States. Because the government's practice conflicts with its statutory duty, this Court should disqualify the National Park Service from any further prosecutorial action in this case.

## II. STATEMENT OF ISSUES

The issues presented before this Court are:

(1) whether the government unlawfully delegated its prosecutorial authority reserved to the Department of Justice under 28 U.S.C. § 516 by authorizing the National Park Service to prosecute the instant case on behalf of the United States; and

(2) if the government's interpretation of assigning its prosecutorial duties to non-Department of Justice employees is supported by the local rules, whether Eastern

District of California, Local Rule 180(b)(4)'s delegation of authority is unlawful.

## III. BACKGROUND

### A. Procedural History

On May 10, 2025, the National Park Service ("NPS") issued two misdemeanor citations to Mr. Anderson. ECF No. 1, 3. Both notices were signed by an NPS law enforcement ranger. *Id.* On November 4, 2025, Mr. Anderson made his initial appearance before this Court. ECF No. 7.

Following his initial appearance, a non-attorney, active law enforcement ranger and law enforcement specialist with the NPS was designated as an "Assistant United States Attorney" and listed as "lead attorney to be noticed" on the electronic docket. On January 13, 2026, the parties appeared before this Court for a first status conference. The NPS representative appeared for the United States and stated that she had shared discovery and tendered a plea offer. ECF No. 9.

At a second status conference in March, defense counsel requested this Court set a briefing schedule. ECF No. 11. In accordance with the briefing schedule, Mr. Anderson filed a motion to suppress on March 31, 2026, challenging the warrantless vehicle search. ECF No. 12. The Rule 180 NPS representative remained on the docket as the sole prosecutor, and the notice of electronic filing confirmed she was served through email with a copy of Mr. Anderson's motion. Under this Court's briefing schedule, any response and reply motions were to be filed in accordance with the deadlines imposed by the Local Rules. *See* ECF No. 11. Here, that meant the government's response was due by April 7, 2026. *See* L.R. 430.1(f) ("Any opposition to a noticed motion shall be served and filed within 7 days after the motion is filed.").

The government did not file a response to Mr. Anderson's motion. Accordingly, Mr. Anderson filed a reply in support of the unopposed motion, along with a proposed order, on April 11. ECF No. 13. As the sole prosecutor representing the United States, the electronic notice confirmed the Rule 180 NPS representative received service of the filing.

On April 16, 2026, nine days after the court-imposed deadline, the government filed a motion requesting this Court consider its untimely opposition brief. ECF No. 14.[1] In its motion,

[1] The electronic docket shows an Assistant United States Attorney was at that time also listed as counsel

the Rule 180 NPS representative confirmed that as counsel for the United States, she "was responsible for drafting the response" to Mr. Anderson's motion, and "mistakenly believed" the deadline allowed 21 days to respond. ECF No. 14, at 1. Although the motion stated it was submitted "by and through the undersigned Assistant United States Attorney," the non-attorney Rule 180 NPS representative was the only signatory. *Id.* at 1–2. Pursuant to the deadlines set under the local rules, Mr. Anderson filed an opposition brief to the government's untimely motion on April 23, 2026. ECF No. 15. On June 25, 2026, this Court granted the government's request to file its untimely motion and ordered Mr. Anderson to file any reply within ten days, ECF No. 16. Mr. Anderson filed his reply. ECF No. 18. This motion to suppress is currently pending before the Court.

**B. Legal Background**

In the Rules Enabling Act of 1934, Congress delegated its authority to the Supreme Court and district courts to prescribe certain rules of practice and legal procedure. 28 U.S.C. §§ 2071–2077. The Rules Enabling Act delineates the scope of authority through which federal courts may prescribe rules of judicial procedure. *See* 28 U.S.C. § 2071(a) (explaining that judicial rules must be "consistent with Acts of Congress and rules of practice and procedure prescribed under section 2072"). Section 2072 authorizes the Supreme Court to set "general rules of practice and procedure and rules of evidence for cases in the United States district courts (including proceedings before magistrate judges thereof) and courts of appeals" on the condition that such procedural rules do "not abridge, enlarge or modify any substantive right." *Id.* § 2072(a–b).

As the Supreme Court explains, "a district court has discretion to adopt local rules that are necessary to carry out the conduct of its business." *Frazier v. Heebe*, 482 U.S. 641, 645 (1987). These procedural rules must remain "consistent with the principles of right and justice" and fall within the boundaries of § 2071. *Id.* at 645–46 (quotation marks omitted). When exercising such authority, a district court may prescribe local rules regulating conduct such as attorney admissions,

---

for the government. While the docket is unclear as no notice of appearance was filed, an AUSA may have been added as counsel upon the filing of the government's April 16 motion. *See* L.R. 18(a)(2) ("Appearance as an attorney of record is made . . . (ii) by causing the attorney's name to be listed in the upper left hand corner of the first page of the initial document . . . .").

discipline, and practice. *Laws. for Fair Reciprocal Admission v. United States*, 141 F.4th 1056, 1063–64 (9th Cir. 2025).

In the Eastern District of California, Local Rules 180–84 set forth procedural requirements through which every practitioner appearing before this Court is bound. *See* L.R. 180 and 182 (primarily regulating attorney procedure); L.R. 181 (governing the practice of certified law students); L.R. 182 (outlining attorney appearance and withdrawal procedure); L.R. 183 (setting a framework for an individual representing herself without an attorney); L.R. 184 (establishing attorney disciplinary procedures). Local Rule 180 ("Rule 180") outlines requirements for attorney admission to this Court's bar; regulates standards of professional conduct; and sets forth ethical obligations. As indicated by its title—"Attorneys"—Rule 180 primarily governs the practice of attorney practitioners within the federal district. But as relevant here, Rule 180 also provides a unique exception under which non-attorney practitioners may appear in federal court on behalf of the government. Rule 180(b)(4) provides:

> (A) An officer, agent or employee of a federal agency or department may practice before the Magistrate Judges on criminal matters in this Court, whether or not that officer, agent, or employee is an attorney, if that officer, agent or employee:
>
> (i) has been assigned by the employing federal agency or department to appear as a prosecutor on its behalf;
>
> (ii) has received four or more hours training from the United States Attorney's Office in the preceding twenty-four (24) months;
>
> (iii) has filed a designation in accordance with (B); and
>
> (iv) is supervised by the United States Attorney's Office. Supervision by the United States Attorney's Office means that employees of that Office are available to answer questions of any such officer, agent, or employee.
>
> (B) Designations shall be filed on a form provided by the Clerk that shall include a verification that the officer, agent, or employee has satisfied the requirements of this Rule. A designation is effective for twenty-four (24) months. The officer, agent, or employee shall file the designation either in Fresno, if the officer, agent, or employee anticipates appearing only before Magistrate Judges at locations in the counties specifically enumerated in L.R. 120(b), or in Sacramento in all other circumstances. After filing the designation in any calendar year, the officer, agent, or employee shall not appear

> before any particular Magistrate Judge without providing a copy of the designation to that Magistrate Judge.
>
> (C) Officers, agents and employees so permitted to practice in this Court are subject to the jurisdiction of this Court with respect to their conduct to the same extent as members of the Bar of this Court.

In sum, Rule 180(b)(4) outlines procedural requirements by which a non-attorney government employee must be trained, designated, and "supervised" if appearing before this Court. Here, the government interprets Rule 180 to allow a non-attorney, active law enforcement park ranger employed outside the Department of Justice ("DOJ") to prosecute cases on behalf of the United States. Like all local rules, however, Rule 180(b)(4) is valid only if it complies with controlling law and principles of justice. *See Frazier*, 482 U.S. at 645–46.

## IV. LEGAL STANDARD

Under Federal Rule of Criminal Procedure 12(b)(1), a defendant "may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." *See United States v. Plascencia-Orozco*, 852 F.3d 910, 920 (9th Cir. 2017).

When addressing issues involving statutory interpretation, courts must "begin[] with the statutory text, and end[] there as well if the text is unambiguous." *United States v. Nishiie*, 996 F.3d 1013, 1020 (9th Cir. 2021) (quoting *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004)); *see also United States v. Brown*, 42 F.4th 1142, 1146 (9th Cir. 2022) ("This means we look at the words in the statute and apply "'their ordinary, contemporary, common meaning.'" (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979))).

A district court's supervisory authority includes the power to disqualify counsel when doing so is necessary to "maintain public confidence in the legal profession and assist[] in protecting the integrity of the judicial proceeding." *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 721 (7th Cir. 1982); *see Certain Underwriters at Lloyd's London v. Argonaut Ins. Co.*, 264 F. Supp. 2d 914, 918 (N.D. Cal. 2003) ("The right to disqualify counsel is a discretionary exercise of the trial court's inherent powers."). In exercising such authority, "[t]he paramount concern is the judiciary's 'independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings *appear fair to all who observe*

*them*.'" *United States v. Urutyan*, 564 F.3d 679, 686 (4th Cir. 2009) (quoting *Wheat v. United States*, 486 U.S. 153, 160 (1988) (emphasis added)).

Attorneys within the DOJ are charged with the statutory duty of prosecuting cases on behalf of the United States. *See* 28 U.S.C. § 516.

## V. ARGUMENT

The foundational structure of the criminal legal system is integral to, and cannot be divorced from, the protection of core, individual rights. An NPS law enforcement ranger and a federal prosecutor serve two separate functions within this structure, and the government's practice of merging the two creates an unlawful system of police prosecution.

The role of the federal prosecutor is distinct, and their authority is unambiguously delineated by statute. *See* 28 U.S.C. § 516 (reserving the United States' litigation to the DOJ); *see generally* 28 U.S.C. § 501–530(D) (defining the authority of the Attorney General). Federal prosecutors are "designated by statute as the President's delegates to help him discharge his constitutional responsibility to 'take Care that the Laws be faithfully executed.'" *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (quoting U.S. Const., Art. II, § 3). As such, federal prosecutors exercise broad discretion within the boundaries of their legal obligations.

By allowing law enforcement rangers to prosecute the instant case, the United States has abdicated its prosecutorial duties and improperly delegated the DOJ's authority to NPS employees. As required by statute, the government cannot delegate such authority absent legal authorization. The government purports to proceed under Rule 180, but the Local Rules must be read in conjunction with the controlling statutory text. Although Rule 180(b)(4) outlines some limited requirements for non-attorney practitioners appearing before the Court, it cannot be interpreted as authorizing non-DOJ employees—let alone law enforcement rangers actively policing the jurisdiction—to prosecute cases on behalf of the United States. Adopting such an interpretation would not only conflict with the plain language of the DOJ's authorizing statutes, but would also distort the appearance of justice by creating a system in which non-attorney, active police officers

are empowered to arrest, charge, investigate, negotiate with, and advocate in court against individuals on behalf of the United States.

To the extent the local rules support the government's practice, however, Rule 180 is unlawful. Local rules governing procedure and general practice before the Court cannot supersede statutory authority. Federal prosecutorial authority is unique to the Attorney General, and absent legal authorization, a local rule cannot be used to delegate this power to non-attorney law enforcement officers or other NPS employees external to the DOJ.

This Court should disqualify the NPS from prosecuting Mr. Anderson because failing to do so would (A) empower the NPS to exceed its law enforcement authority and exercise the DOJ's prosecutorial power in violation of 28 U.S.C. § 516; (B) employ an unlawful interpretation of the local rules; and (C) distort the appearance of justice.

### A. The United States Unlawfully Delegated its Prosecutorial Authority to Active Law Enforcement Rangers in Violation of 28 U.S.C. § 516, Rendering Any Prosecutorial Conduct Taken by the NPS *Ultra Vires*.

#### 1. The DOJ is Required by Statute to Litigate on Behalf of the United States.

The conduct of federal government litigation is reserved to the DOJ. 28 U.S.C. § 516. Indeed, § 516 requires, "[e]xcept as otherwise authorized by law, the conduct of litigation in which the United States, an agency, or officer thereof is a party, or is interested, and securing evidence therefor, is reserved to officers of the Department of Justice, under the direction of the Attorney General." Because the United States Attorney's Office ("USAO") has allowed the NPS to prosecute Mr. Anderson, this case is grounded in an impermissible delegation of statutory authority.

When interpreting a statute's plain text, "the sole function of the courts . . . is to enforce it according to its terms." *Connell v. Lima Corp.*, 988 F.3d 1089, 1097 (9th Cir. 2021) (quoting *Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004) (citations omitted))). Section 516 is unambiguous as it provides that any "conduct of litigation" on behalf of the United States must be "reserved to officers of the Department of Justice" unless "otherwise authorized by law." Absent legal

authorization stating otherwise, any prosecution against Mr. Anderson must be reserved to the DOJ because the United States is the plaintiff in this matter. 28 U.S.C. § 516; *see also id.* § 519 (providing that the Attorney General shall supervise all litigation in which the United States is a party unless otherwise authorized by law); *In re Persico*, 522 F.2d 41, 54 (2d Cir. 1975) (explaining the power to conduct federal criminal litigation is "an executive function within the exclusive prerogative of the Attorney General.") (quotation marks omitted)).

The court may also look to statutory history and structure to inform its interpretation of the text. *See Snyder v. United States*, 603 U.S. 1, 10–12 (2024). Here, the statutory structure reinforces the text's unambiguous meaning in further clarifying the prosecutor's authority, and identifying when delegation might be appropriate.

Looking to the chapter governing United States Attorneys specifically, 28 U.S.C. § 547(1) provides that unless "otherwise provided by law, each United States attorney" is charged with prosecuting "all offenses against the United States[.]" *See United States v. Baldwin*, 541 F. Supp. 2d 1184, 1189 (D.N.M. 2008) ("With a few exceptions, the United States attorneys have been delegated the authority to make the important and sensitive decisions that drive criminal prosecutions."). As made clear under § 516, any decision to delegate the DOJ's authority to litigate cases in which the United States is a party must be made pursuant to legal authorization.

Anticipating that delegation may at times be necessary, Congress provided such legal authority for certain non-DOJ agencies to represent the government in litigation. *See, e.g.*, 26 U.S.C. § 7452 ("The Secretary shall be represented by the Chief Counsel for the Internal Revenue Service or his delegate in the same manner before the Tax Court as he has heretofore been represented in proceedings before such Court."); *Leonard v. U.S Postal Service*, 489 F.2d 814, 816–18 (1st Cir. 1974) (acknowledging the DOJ's authority under 28 U.S.C. § 516 and explaining a statutory exception under the Postal Reorganization Act that allowed the Postal Service to settle certain litigation over the DOJ's objection). No analogous act of Congress allows the NPS to conduct litigation on behalf of the United States.

Notably, Congress has also provided for certain delegations of authority within the DOJ itself. In the statutory section titled "Delegation of authority[,]" Congress explains the Attorney General may authorize "the performance by any other officer, employee, or agency *of the Department of Justice* of any function of the Attorney General." 28 U.S.C. § 510 (emphasis added). And under § 515(a), the Attorney General possesses the statutory authority to direct an "officer of the *Department of Justice*, or any *attorney* specially appointed by the Attorney General under law" to "conduct any kind of legal proceeding, civil or criminal . . . which United States attorneys are authorized to conduct[.]" *Id.* (emphases added).

As alluded to in § 515(a), the Attorney General may appoint "special *attorneys*"—subject to removal by the Attorney General—"to assist United States attorneys when public interest so requires[.]" 28 U.S.C. § 543; *see also United States v. Libby*, 429 F. Supp. 2d 27, 33 (D.D.C. 2006) (upholding the Deputy Attorney General's exercise of authority in delegating authority to the Special Counsel to investigate and prosecute given a believed conflict of interest).

The DOJ's own Office of Legal Counsel has recently interpreted these provisions to allow for appointment of attorneys from other agencies to work as special attorneys in the DOJ. When the United States Attorney for the District of Columbia requested additional attorneys serve as Special Assistant United States Attorneys ("SAUSAs") to "assist in prosecuting misdemeanors[,]" the Office of Legal Counsel explained its position on the government's authority to proceed. *Detailing Att'ys to the DOJ. to Serve As Immigr. Judges & Special Assistant United States Att'ys*, 49 Op. O.L.C. __ (Oct. 23, 2025), 2025 WL 3251684, at *2. The government itself reasoned that federal law allows "interagency details of lawyers" to serve as SAUSAs, and although § 516 reserves litigation to the DOJ, § 543(a) permits the Attorney General to "appoint attorneys to assist United States Attorneys 'when the public interest so requires.'" *Id.* at *3–4 (quoting 28 U.S.C. § 543(a)).

These provisions confirm not only that Congress set out specific instructions limiting the delegation of prosecutorial authority, but also that allowing non-attorney NPS representatives and

law enforcement officers to litigate on behalf of the United States is not one such exception authorized by law.

**2. The Department of the Interior May Empower the NPS to Exercise Certain Police Powers—Not Prosecutorial Powers—on its Behalf.**

Like federal prosecutors, the NPS law enforcement rangers exercise specified authority prescribed by law. The Secretary to the Department of the Interior ("DOI") is permitted to "designate certain officers or employees" of its Department to "maintain law and order and protect individuals and property within System units." 54 U.S.C. § 102701(a)(1). Because the NPS is an agency within the DOI, the Secretary may authorize the NPS law enforcement rangers to exercise certain police powers. Specifically, law enforcement rangers are permitted to carry firearms, arrest individuals, execute warrants, and conduct investigations. *Id.* § 102701(a)(2).

Notably absent is any congressional authority that would permit law enforcement officers to exercise prosecutorial authority or fulfill duties reserved to the DOJ. Any prosecutorial action taken by active law enforcement rangers within the NPS is thus *ultra vires* and unlawful.

**3. The Local Rules Cannot Authorize the United States to Delegate its Prosecutorial Authority to NPS.**

Without citing any statutory authority validating its delegation, the United States relies on Rule 180 to employ the NPS to fulfill the DOJ's prosecutorial responsibilities. But Rule 180 does not explicitly authorize the DOJ to hand over its duties to an external agency, and the local rules must be read in harmony with controlling law. The government's Rule 180 practice clearly conflicts with 28 U.S.C. § 516, which requires legal authorization for non-DOJ employees to conduct the United States' litigation, as well as with § 547, which requires legal authorization for non-United States attorneys to prosecute offenses against the United States in their district. Because Rule 180 does not constitute such legal authority, it fails to provide a valid basis upon which the NPS may prosecute Mr. Anderson.

If Rule 180(b)(4) can be interpreted to sanction the government's practice here, the rule itself must deemed unlawful and invalidated. Although a district court has "broad discretion to

adopt local rules that are necessary to carry out the conduct of its business[,]" local rules must be consistent with the United States Constitution; any Act of Congress; the federal rules of procedure; the procedures prescribed by the Supreme Court; and the "the principles of right and justice." *Frazier*, 482 U.S. at 645–46; 28 U.S.C. § 2071(a).

The government's act of delegating its prosecutorial authority to a law enforcement ranger who is simultaneously acting as a Rule 180 NPS representative in this case is part of its regular practice in misdemeanor cases arising out of Yosemite National Park.[2]

This practice has entrenched a system of police prosecution which, as seen here, is also devoid of supervision.[3] In fact, Rule 180 does not even demand meaningful attorney supervision. As defined under Rule 180(b)(4)(A)(iv), "supervision" merely requires the USAO to be "available to answer questions of any [designated Rule 180 representative]." The government's unlawful delegation and complete abdication of its prosecutorial duties is further proof of its utter failure to fulfill the duty Congress entrusted to the DOJ.

Because the USAO improperly ceded its responsibilities to the NPS, "[the Rule 180] Counsel for the Government" was "responsible for drafting the response to the Defendant's motion[s,]" ECF No. 14, at 1. The USAO did not intervene to respond to Mr. Anderson's motion by this Court's deadline, and the Rule 180 NPS representative was the only signatory on the untimely opposition. *See id.* Government attorneys within this district regularly practice under standard deadlines governed by the local rules. That the Rule 180 NPS representative either did not read or did not understand Rule 430.1—thereby holding an incorrect view of the government's

---

[2] In addition to violating its statutory obligation to represent the United States, it is important to note that the USAO's practice may also conflict with the federal rules. Indeed, in government petty offenses and other misdemeanors, Federal Rule of Criminal Procedure 58 explicitly authorizes the "attorney for the government" with certain responsibilities. Fed. R. Crim. P. 58(b)(2)(H), (d)(3), (g)(2)(B). *See ABS Entertainment, Inc. v. CBS Corporation*, 908 F.3d 405, 427 (9th Cir. 2018) ("Local Rules cannot be incompatible with Federal Rules.").

[3] As confirmed at a recent bench trial, none of the government's witnesses had contact with an AUSA or DOJ employee, and their government communication was limited to NPS representatives. *United States v. O'Brien*, 6:25-mj-00015-HBK, ECF No. 25, Audio at 9:28:21–9:28:53, 9:53:46–9:54:13, 10:46:39–10:47:24, 11:18:41–11:19:05 (E.D. Cal. June 29, 2026).

basic obligations while representing the United States—confirms the United States fully delegated its prosecutorial responsibility to the NPS. This is not the first time the USAO's absence has come before this Court. *See United States v. Marsh*, No. 1:24-MJ-00092-HBK, 2024 WL 4667801, at *3 n.4 (E.D. Cal. Nov. 4, 2024) ("The Court has previously expressed its concern with what it perceived as a lack of supervision, training, and/or oversight by the U.S. Attorney Supervisor with the designated NPS Rule 180(b)(4) employee.").

The docket in this case further confirms the lack of involvement by the DOJ, as a Rule 180 NPS representative is designated as an AUSA and noticed as a lead attorney of record. Thus, as lead counsel, the non-attorney, Rule 180 representative and active law enforcement officer exercises prosecutorial functions and discretion by:

- reviewing the conduct of her law enforcement colleagues holding the same officer position;
- finalizing charges recommended by those colleagues;
- supervising those colleagues' investigation and discovery production;
- representing the United States in court;
- engaging in plea negotiations;
- and litigating motions.

*See* ECF Nos. 1, 9, 11, 14.

Notably, undersigned counsel was unable to identify a similar practice of police prosecution in a federal district outside the Eastern District of California. This is consistent with the legal framework through which a local rule may neither run afoul of the congressional directive primarily reserving litigation on behalf of the United States to the DOJ, nor constitute legal authorization expressly required under 28 U.S.C. § 516.

//

//

//

//

**4. Upholding a System of Police Prosecution Contravenes Foundational Principles of Fairness and Distorts the Appearance of Justice.**

Any interpretation by the government allowing the NPS law enforcement rangers to investigate, arrest, and prosecute individuals would not only be inconsistent with 28 U.S.C. § 516, but also infringe upon core "principles of right and justice." *Frazier*, 482 U.S. at 645–46. More specifically, upholding such a practice would establish a dual role in which non-attorney, active law enforcement officers are authorized to exercise broad prosecutorial discretion in determining charges and litigating cases on behalf of the United States through any trial or potential sentencing. NPS employees would do so while serving the DOI and exercising their law enforcement powers as officers authorized to generally police visitors to Yosemite National Park. Allowing such a practice to continue within this jurisdiction would erode public confidence and threaten the integrity of legal proceedings for at least three reasons.

First, a law enforcement ranger is effectively a police officer, and a police officer is not a federal prosecutor. These roles are necessarily separate for good reason, and blurring the line between the two effectively distorts the appearance of justice.

Second, a core tenet of criminal proceedings includes a presumption of regularity. This principle is grounded in the understanding that because of their position, the federal prosecutor exercises the immense power of the federal government in a manner that is fair and in pursuit of justice. When a non-attorney prosecutor or law enforcement officer exercises this authority, however, no such presumption applies.

Last, this presumption of regularity is reinforced by a specific code of ethics binding every attorney, as well as other protections ingrained in the criminal legal system. Built into this system is a set of mechanisms by which police officers' decisions are reviewed, and attorney disciplinary action may be triggered, thus providing a framework of accountability to help safeguard the integrity of judicial proceedings. The NPS representatives are not bound by the same rules of ethics, because while Rule 180(b)(4)(C) requires certain standards, a non-attorney police-prosecutor is not subject to discipline by a state bar. Thus, when a police officer is empowered to

prosecute, an individual accused of a criminal offense is stripped of any meaningful ability to reinforce established safeguards.

**B. A Law Enforcement Ranger is Not a Federal Prosecutor.**

A prosecutor "is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all[.]" *United States v. Bowen*, 799 F.3d 336, 354 (5th Cir. 2015) (quoting *Berger v. United States*, 295 U.S. 78, 88) (1935)). A prosecutor's interest in a criminal matter is *not* to win or represent individuals, but "that justice shall be done." *Id.*

As law enforcement personnel within the DOI, however, the NPS rangers are charged with "maintain[ing] law and order and protect[ing] individuals and property within System units." 54 U.S.C. § 102701(a)(1); *see also* "National Park Service Law Enforcement Ranger Program," U.S. Department of the Interior[4] (explaining law enforcement rangers "work to fulfill the NPS mission by protecting the natural and cultural resources parks were established to preserve, and by keeping people safe when they visit."). Just as the DOJ pursues various policy objectives in pursuit of justice, the NPS outlines its own policy objectives to achieve its specific mission.

**1. The Presumption of Regularity Does Not Apply to a Law Enforcement Ranger.**

While each role serves a distinct function, it is *only* the federal prosecutor who represents the United States and litigates under a presumption of regularity. *United States v. Sellers*, 906 F.3d 848, 853 (9th Cir. 2018). In fulfilling their mandate, prosecutors may exercise significant discretion within the boundaries of their ethical obligations. *See United States v. Banuelos-Rodriguez*, 215 F.3d 969, 976 (9th Cir. 2000) ("Courts generally have no place interfering with a prosecutor's discretion regarding whom to prosecute, what charges to file, and whether to engage in plea negotiations."). Courts have determined this presumption of regularity applies to prosecutorial decisions and provides "'a measure of protection (and confidentiality)' to

[4] Available at https://www.doi.gov/oles/national-park-service-law-enforcement-ranger-program.

prosecutors' 'deliberative processes, which are covered by strong privileges.'" *Sellers*, 906 F.3d at 853 (quoting *United States v. Davis*, 793 F.3d 712, 720 (7th Cir. 2015) (en banc)).

Critically, there is a "'special solicitude courts have shown to prosecutors' discretion' that 'does not inevitably flow to the actions of law enforcement.'" *Id.* at 854 (quoting *United States v. Washington*, 869 F.3d 193, 216, 219 (3d Cir. 2017)). This makes sense given the extent of the prosecutor's authority. *See also Bordenkircher v. Hayes*, 434 U.S. 357, 365 (1978) ("There is no doubt that the breadth of discretion that our country's legal system vests in prosecuting attorneys carries with it the potential for both individual and institutional abuse."). As summarized by the Ninth Circuit, law enforcement "agents occupy a different space and role in our system than prosecutors; they are not charged with the same constitutional functions, and their decisions are more often scrutinized by—and in—courts." *Sellers*, 906 F.3d. at 853. Thus, a system merging the two roles and authorizing active law enforcement rangers to both arrest *and* prosecute individuals lacks any presumption of regularity.

**2. A System of Police Prosecution is Devoid of the Safeguards Underpinning the Foundational Structure of Criminal Law.**

The government's practice of police prosecution erodes public confidence in judicial proceedings given the lack of accountability through review, protection of a specific code of ethics, and other standardized obligations. It is impossible to reconcile how a system tethered to fairness could consolidate two intentionally separate roles, eliminate critical review, and expand authority cabined by statute—all while maintaining the same appearance of justice. *See United States v. Edwards*, 154 F.3d 915, 921 (9th Cir. 1998) (discussing the "broader concern for public confidence in the administration of justice," and implementation of "the maxim that 'justice must satisfy the appearance of justice.'") (quoting *United States v. Johnston*, 690 F.2d 638, 643 (7th Cir. 1982)).

a. <u>Absence of Review</u>

Embedded in the general order of criminal legal proceedings are certain mechanisms that aid in protecting public confidence in the judicial process. For example, under standard procedure, law enforcement officers make arrests, and prosecutors determine charges. In a case "referred to

the United States Attorney's Office for review and prosecution," courts "assume that the United States Attorney exercised proper discretion to prosecute in federal court[]" and thus relies upon a presumption of regularity in ensuring a criminal case has passed constitutional muster. *United States v. Robinson*, 967 F.2d 287, 290 (9th Cir. 1992) (finding no due process violation when the police officer referred the case to the federal prosecutor instead of the state prosecutor and assuming this decision was reviewed by the USAO), *recognized as overruled on other grounds by Ortega-Mendez v. Gonzales*, 450 F.3d 1010, 1018–20 (9th Cir. 2006).

A system that authorizes the same actors who make arrests to also finalize charges removes an essential mechanism for review. Such review is critical. *See generally Kirby v. Illinois*, 406 U.S. 682, 689 (1972) ("The initiation of judicial criminal proceedings is far from a mere formalism. It is the starting point of our whole system of adversary criminal justice. For it is only then that the government has committed itself to prosecute, and only then that the adverse positions of government and defendant have solidified."). Including such institutional review is especially important given that prosecutorial discretion exercised in determining whether to prosecute "is particularly ill-suited to judicial review." *Wayte v. United States*, 470 U.S. 598, 607 (1985).

Without review by an attorney, a law enforcement officer's decision to arrest or issue a specific citation is more likely to automatically translate into a criminal case.[5] Even if an attorney later intervenes, or an individual is ultimately acquitted, improper prosecutorial decisions by non-attorney practitioners cause harm by needlessly subjecting an individual to criminal prosecution. *Cf. Young v. United States ex rel. Vuitton*, 481 U.S. 787, 814 (1987) ("Between the private life of the citizen and public glare of criminal accusation stands the prosecutor. . . . Even if a defendant is ultimately acquitted, forced immersion in criminal investigation and adjudication is a wrenching disruption of everyday life. For this reason, we must have assurance that those who would wield this power will be guided solely by their sense of public responsibility for the attainment of

[5] The serious risk of "[o]vercriminalization in [f]ederal [r]egulations" was broadly addressed in an executive order issued by President Donald Trump. Exec. Order No. 14,294, 90 Fed. Reg. 20,363 (May 14, 2025).

justice.").

The nonsensical, harmful implications of delegating prosecutorial authority to police officers are displayed here. In arresting, charging, and prosecuting Mr. Anderson, the NPS law enforcement rangers are permitted to litigate the constitutionality of the warrantless vehicle search conducted by their fellow law enforcement rangers holding the same, or potentially supervisory, job titles. Given the unique nature of the government's practice in Yosemite National Park, there is no law addressing the conflicts of interest to ensure that law enforcement rangers are prohibited from litigating their colleagues' conduct, or exercising prosecutorial influence in cases they policed, when later operating under their Rule 180 authority. And as the Ninth Circuit makes clear, "law enforcement officers do not enjoy the same strong presumption that they are constitutionally enforcing the laws that prosecutors do." *Sellers*, 906 F.3d at 853.

To assume active law enforcement officers view their colleagues' policing decisions through the lens of a federal prosecutor defies logic. To place such an expectation on officers is also unfair to them, as the two sets of expertise are meant to be separate. Indeed, an integral part of criminal procedure allows for the litigation of policing decisions to be argued between attorneys and decided by a judge. As relevant to Mr. Anderson's pending motion to suppress, "[t]he point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences[,]" but that "[i]ts protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." *Johnson v. United States*, 333 U.S. 10, 13–14 (1948).

In consolidating the police officer and prosecutor roles, the government's practice distorts the appearance of justice and creates other practical issues. For example, even the difference in attire between an AUSA and a law enforcement ranger can threaten fairness. *See Holbrook v. Flynn*, 475 U.S. 560, 570–71 (1986) ("We do not minimize the threat that a roomful of uniformed and armed policemen might pose to a defendant's chances of receiving a fair trial."). Despite such concerns, *see* Declaration of Lisa N. Lumeya, ¶ 3, the USAO still delegates its prosecutorial duties

to NPS representatives dressed in law enforcement uniforms when appearing on behalf of the United States, *see* Declaration of Jonathan McKinney, ¶ 3–4.

Another practical issue can be seen in subpoena service. Because the majority of individuals with court-appointed counsel in Yosemite National Park are represented by the Federal Defender's Office, defense investigators have worked closely with NPS law enforcement rangers when serving court-issued subpoenas. In doing so, defense investigators and NPS law enforcement rangers have developed a system to streamline service and avoid the inconvenience of disrupting a ranger's privacy at their residence. Declaration of Vincent Lee, ¶ 4. When recently effectuating service under this system, a supervisory park ranger asked a defense investigator to copy the law enforcement ranger email on a message regarding the subpoena. *Id.* ¶ 5. The supervisory ranger also suggested the defense investigator do so moving forward. *Id.* This is problematic as subpoenas are issued under seal, and the NPS Rule 180 representatives include active law enforcement rangers who could have access to the law enforcement email account.

As this Court is aware, the United States' Rule 180 practice has also led to issues regarding discovery. *See Marsh*, 2024 WL 4667801, at *3 ("Although the Court finds that a dismissal with prejudice to be unwarranted in these circumstances, the Court would be remiss if it did not take this opportunity to both warn the government that further discovery violations will not be tolerated and to advise the government that it would be prudent to implement formal procedures for handling misdemeanor cases to avoid confusion and mismanagement in the future."); *see also United States v. O'Brien*, 6:25-MJ-00015-HBK, ECF No. 17, Def. Reply Mot., at 3 n.1 (E.D. Cal. June 17, 2026) (documenting the NPS's late discovery production); *United States v. Gearheart*, 6:23-MJ-00006-HBK, ECF No. 63, Def. Mot., at 3 (E.D. Cal. Mar. 5, 2025) (same); *United States v. Marsh*, 1:24-MJ-00092-HBK, ECF No. 16, Def. Reply Mot., at 4 (E.D. Cal. Sept. 27, 2024) (discussing late NPS discovery shared in *United States v. Kidd*, 6:24-MJ-00016-HBK; and *United States v. Pena*, 6:24-PO-00390-HBK). Here too, the Rule 180 NPS representative produced discovery on June 9, 2026—203 days *after* the deadline to produce initial discovery—including information required

to be disclosed under Federal Rule of Criminal Procedure 16(a) that had been in rangers' possession for more than one year (since May 19, 2025).

That the NPS-DOI manages discovery instead of the USAO has led to other issues more broadly, because the Rule 180 discovery production fails to adhere to the USAO's established protocol. Declaration of Julie Butler, ¶ 6. This is problematic because such protocol helps ensure production is timely based on the Court's order. *Id.* ¶ 4. Following this regulated system also "ensures that the receiving party can review the evidence and determine whether the production is complete and accurately reflects the materials intended to be disclosed." *Id.* Due to the nature of federal cases, it is not unusual that discovery includes information from other departments and agencies. In those circumstances, however, "[t]hese protocols are respected[.]" *Id.*

According to the government, the NPS office does not have access to the same system used by the USAO. *Id.* ¶ 6. Again, the NPS is external to the DOJ, and outsourcing the DOJ's duty to manage a responsibility so critical as discovery production is yet another example of the government's untenable practice. The USAO has adhered to its own discovery protocol regarding other misdemeanor dockets, *id.* ¶ 5, but it chooses not to do so here by instead delegating its responsibilities to non-attorney NPS representatives without access to the DOJ's internal system.

b. <u>Absence of a Standardized System of Ethics</u>

When a non-attorney represents the United States in court, the practitioner is not subject to a standardized code of legal ethics. This is significant as a federal prosecutor's ethical standards are delineated by statute. *See* 28 U.S.C. § 530B (providing ethical standards for attorneys for the government, including designated and appointed counsel authorized by law). And unlike attorneys supervising certified law students who "assume personal professional responsibility" for the student's work, L.R. 181(e)(3), Rule 180(b)(4) does not hold an assigned AUSA professionally responsible for any actions of the non-attorney, Rule 180 representative.

As licensed attorneys, federal prosecutors are bound to the obligations of their state bar. *See* L.R. 180(a–b) (requiring that licensed attorneys appearing before this Court maintain an active

bar membership and remain in good standing). One foundational obligation under the American Bar Association ("ABA") Model Rules of Professional Conduct requires attorneys to provide competent representation. ABA Model Rule 1.1 ("A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."). Given their role, prosecutors also have specific obligations. *See* ABA Model Rule 3.8: Special Responsibilities of a Prosecutor.

Due to their differing function, law enforcement officers instead serve under a separate code of ethics and obligations specific to their authority. Principles such as the advocate-witness rule directly apply to *attorneys* and are aimed at "protecting the integrity of the fact-finding process" by compelling a prosecutor to choose between proceeding as counsel or a potential witness. *United States v. Batchler*, No. 2:16-cr-00292, 2017 WL 1745025, at *2 (D. Nev. May 2, 2017) (citing *United States v. Prantil*, 764 F.2d 548, 552–54 (9th Cir. 1985)); *see* ABA Model Rule 3.7: Lawyer as Witness. Without requiring prosecutors to be barred attorneys, the non-DOJ employees represent the United States without being subject to the same rules and disciplinary procedure. Unlike with a licensed attorney, there is no state bar governing police-prosecutors to which an individual may report issues regarding court proceedings.[6]

The current system not only eliminates a critical level of transparency, but also removes one of the most direct and meaningful forms of accountability protecting public confidence in legal proceedings. Notably, allowing a non-attorney to represent the United States without being subject to such discipline has previously led to an individual's disqualification. *See United States ex rel. Schwartz v. TRW Inc.*, 118 F. Supp. 2d 991, 995 (C.D. Cal. 2000) (disqualifying a non-attorney from representing the government in a *qui tam* action, noting that non-attorneys do not face the threat of serious consequences for violating ethical constraints of which they "may have no knowledge of and no obligation"); *see also Jones v. Niagara Frontier Transp. Auth.*, 722 F.2d 20,

---

[6] As a separate agency, the NPS has its own procedure through which individuals may submit a complaint against an NPS law enforcement officer to the NPS Office of Professional Responsibility, *see* https://www.nps.gov/orgs/1358/submit-a-complaint.htm. This complaint process concerns law enforcement officers—not police-prosecutors.

22 (2d Cir. 1983) (affirming dismissal of a case in which a corporation sought to appear through a non-attorney, noting "In addition to lacking the professional skills of a lawyer, the lay litigant lacks many of the attorney's ethical responsibilities, *e.g.*, to avoid litigating unfounded or vexatious claims.").

The government's current system, empowering non-attorney prosecutors within the NPS, also eliminates the clear application of the DOJ's Manual and internal system of accountability. Although the DOJ has an "obligation to its lawyers and to the public to prevent prosecutorial misconduct[,]" it is unclear how the government's "duty to own up" to improper conduct applies when the non-attorney prosecutor is external to the DOJ. *United States v. Lopez-Avila*, 678 F.3d 955, 964–65 (9th Cir. 2012) (noting that the DOJ's Office of Professional Responsibility holds the responsibility of investigating federal prosecutors' alleged misconduct).

In addition, these practical implications do not even begin to account for the impact of departing from the DOJ's hiring policies. Indeed, the DOJ cannot even use "funds available to the Attorney General" to compensate a domestic attorney unless she maintains an active license to practice law. 28 U.S.C. § 530C(c)(1). Prior to obtaining their bar license, the prosecutor is required to attend law school. Before an attorney is retained as a federal prosecutor, "[o]ne of the most important responsibilities of the United States Attorney" and senior deputies is "ensuring that line attorneys are aware of the special ethical responsibilities of prosecutors, and that they resist the temptation to overreach." *United States v. Kojayan*, 8 F.3d 1315, 1324 (9th Cir. 1993). This makes sense given federal prosecutors "are subject to constraints and responsibilities that do not apply to other lawyers; they must serve truth and justice first." *Lopez-Avila*, 678 F.3d at 964.

Instead, according to Rule 180(b)(4)(A)(ii), a non-attorney representative is only required to obtain *four hours* of legal training every two years. "[T]raining to impart awareness of constitutional rights is an essential function of an office . . . whose administration of justice the public [relies on]." *Kojayan*, 8 F.3d at 1324 (quoting *United States v. Foster*, 985 F.2d 466, 469 (9th Cir. 1993)). Such training cannot be accomplished in four hours every two years. Yet here, with this limited instruction, Rule 180 representatives may obtain authorization to prosecute

individuals with the full power of the federal government. Such authority spans the entirety of the prosecution, even including advocating for custodial sentences should an individual be convicted. *See id.* (expressing concern about "the great danger in untrained lawyers wielding public power" (quotation marks omitted)).

No matter the substance, four hours of condensed legal training simply cannot be deemed sufficient to equip non-attorney police officers to satisfy the rules of legal ethics and prosecute individuals on behalf of the United States. Nor should it. The DOJ has established strict requirements to ensure its prosecutors are able to fulfill its mandate. The DOJ is required by statute to litigate on behalf of the United States, and it cannot abdicate this duty in misdemeanor cases.

**C. This Court Should Exercise its Supervisory Power to Remedy the Government's Unlawful Delegation by Disqualifying the NPS From Participating in the Prosecution of the Instant Case.**

The NPS is prosecuting Mr. Anderson on behalf of the United States. The USAO is now included on the docket in name, but the government's own actions confirm the NPS is responsible for determining charges, ECF No. 1; filing motions, ECF No. 14; managing plea negotiations, and representing the United States in court, ECF No. 9. Although disqualification of an entire office is generally considered under a heightened standard, the unique posture of this case renders disqualification the sole remedy outside dismissal. Unlike in most criminal cases where the question of disqualification would involve a licensed attorney, the analysis before this Court is whether disqualification of an agency is warranted to remedy the government's unauthorized delegation of federal prosecutorial power.

Given the government's unlawful delegation, an order disqualifying the NPS from further prosecution against Mr. Anderson is necessary to protect the integrity of judicial proceedings and—at minimum—satisfy the appearance of justice. *See United States v. Giraud*, 160 F.4th 390, 406–07 (3d Cir. 2025) (affirming the district court's disqualification order because the Attorney General's delegation exceeded her statutory authority and the prosecutor was prevented by statute from assuming the role of Acting United States Attorney); *see also Offutt v. United States*, 348

U.S. 11, 13 (1954) ("These are subtle matters, for they concern the ingredients of what constitutes justice. Therefore, justice must satisfy the appearance of justice.").

## VI. CONCLUSION

Based on the foregoing, Mr. Anderson respectfully requests that this Court find the United States unlawfully delegated its authority to active law enforcement officers external to the DOJ, and disqualify the NPS from further prosecutorial action.

Respectfully submitted,

HEATHER E. WILLIAMS
Federal Defender

Date: July 28, 2026

*/s/ Lisa Ndembu Lumeya*
LISA N. LUMEYA
Assistant Federal Defender
Attorney for Defendant
GAVIN ANDERSON