HEATHER E. WILLIAMS, CA Bar #122664
Federal Defender
LISA N. LUMEYA, DC Bar #90017392
Assistant Federal Defender
Office of the Federal Defender
2300 Tulare Street, Suite 330
Fresno, CA 93721-2226
Telephone: (559) 487-5561
Fax: (559) 487-5950

Counsel for Defendant
GAVIN ANDERSON

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>vs.<br>GAVIN ANDERSON,<br>Defendant. | Case No. 6:25-po-00452-HBK<br>**REPLY TO GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO DISQUALIFY NATIONAL PARK SERVICE** |

With cursory analysis, the government glosses over the legal boundaries outlining its prosecutorial duties and instead grounds its focus on whether it has complied with Eastern District of California, Local Rule 180(b)(4). This confuses the issues before this Court. Mr. Anderson challenges the United States's delegation of its broad prosecutorial authority to an agency external to the Department of Justice ("DOJ"). The United States's interpretation of Rule 180 to delegate its prosecutorial duties to active law enforcement officers within the National Park Service ("NPS") violates its statutory authority and renders the Rule itself inconsistent with the principles of right and justice. The disqualification of the NPS is an appropriate remedy for the government's unlawful delegation, as disqualification will require the DOJ to fulfill its statutory responsibility and ensure Rule 180 remains consistent with the principles of right and justice.

# I. ARGUMENT

There are two legal issues before this Court: (1) whether the government unlawfully delegated its prosecutorial authority reserved to the DOJ by authorizing the NPS to prosecute the instant case on behalf of the United States; and (2) if the government correctly interprets Rule 180(b)(4) to support its current practice, whether the local rule's delegation of authority is unlawful.

First, Congress unambiguously reserved the "conduct of litigation" on behalf of the United States to "officers of the Department of Justice" unless "otherwise authorized by law." 28 U.S.C. § 516. Congress further reserved the prosecution of "all offenses against the United States" to "each United States attorney, within his district." *Id.* § 547(1). ECF No. 20, at 2.

The government fails to identify any statutory or regulatory authority permitting its current practice of delegating its prosecutorial duties to active law enforcement officers external to the DOJ. Instead, the government admits that its only basis for delegating its statutory duties to the NPS is its interpretation of Rule 180(b)(4) as allowing the USAO to delegate prosecutorial authority to actors external to the DOJ. The government ignores that Congress anticipated and provided for certain delegations of litigation authority both within and outside of the DOJ. *See* ECF No. 19, at 9–10. None of the statutory bases for delegation allow for the government's litigation to be carried out by non-attorney law enforcement rangers. Nor do the authorizing statutes allow for modification by local court rule. Because Congress unambiguously provided the DOJ with the authority to delegate its responsibilities pursuant to specific legal authorization, and no such authorization is present here, the government's delegation of prosecutorial responsibilities to the NPS is unlawful.

Second, while Rule 180(b)(4) outlines procedural requirements through which a non-attorney government employee may make certain court appearances, the rule is only valid insofar as it complies with controlling laws and the principles of right and justice." *Frazier v. Heebe*, 482 U.S. 641, 645–46 (1987).

The government has delegated its prosecutorial duty in this case to active law enforcement officers within the NPS. If, as the government argues, such delegation is supported by Rule 180(b)(4), then the Rule itself is unlawful as applied. A system of police prosecution in which a non-attorney police officer external to the DOJ may initiate and litigate criminal proceedings contravenes foundational principles of fairness and inherently distorts the appearance of justice, making this application of the Rule unlawful under Supreme Court precedent. It is telling that the government does not even attempt to argue that its practice here is consistent with the principles of justice. Because "justice must satisfy the appearance of justice[,]" *Offutt v. United States*, 348 U.S. 11, 13 (1954), and for the reasons outlined below, as well as in Mr. Anderson's motion to disqualify, this Court should exercise its supervisory power to remedy the government's unlawful delegation by disqualifying the NPS from prosecuting Mr. Anderson.

**A. The Government Confuses the Issues and Neglects the Legal Standard.**

Without the support of any binding legal authority, the government argues it may delegate its responsibilities to active law enforcement officers within an external department to prosecute Mr. Anderson on behalf of the United States because: (1) the relevant statutes only require the DOJ to be responsible for the conduct of litigation but do not state how prosecutorial "responsibilities are supposed to be executed[;]" (2) the authorizing statute exists for the benefit of the government; and (3) "Rule 180 is a long-standing local rule" that is "sanctioned by the United States Attorney's Office[.]" The government's argument confuses the issues, ignores much of Mr. Anderson's argument, and overlooks the relevant legal standard.

1. <u>The Government Ignores the Issues Mr. Anderson Raises as Applied to his Case.</u>

To start, the government incorrectly argues Mr. Anderson has asked this Court to find Rule 180 facially invalid and disqualify specific Rule 180 officers without citing any specific issues in his case. ECF No. 20, at 4–10. This misrepresents the relief Mr. Anderson is seeking and ignores the arguments Mr. Anderson actually made. Mr. Anderson asks this Court to disqualify the *entire* NPS from prosecuting this case against him because (1) the government lacks a legal basis to support its delegation of the DOJ's prosecutorial authority; and (2) the government's application

of Rule 180(b)(4) to delegate its prosecutorial responsibilities to active law enforcement officers within the NPS inconsistent with principles of justice.

Relevant to the second issue, in Mr. Anderson's case, the government's decision to abdicate its prosecutorial responsibilities resulted in the 203-day-late production of initial discovery required under Federal Rule of Criminal Procedure 16. ECF No. 19, at 18–19. The government's decision to delegate its duties to the NPS also resulted in an untimely opposition in violation of the local rules. *Id.* at 11–12. The government has repeatedly conceded that a Rule 180 NPS representative in this case "was responsible for drafting" the motion and did not know the filing deadlines under the local rules. ECF No. 14, at 1; ECF No. 19, at 11–12; *see* ECF No. 20, at 2 ([Rule 180 NPS representative] filed the responses on behalf of the government.").

By ceding its duties, the USAO's responsibility of responding to Mr. Anderson's motion challenging the constitutionality of the warrantless vehicle search fell to the same agency that conducted the search in the first place. Such practice does not satisfy the appearance of justice as the presumption of regularity does not apply to law enforcement officers. *See United States v. Sellers, 906 F.3d 848, 853 (9th Cir. 2018)* (explaining that "agents occupy a different space and role in our system than prosecutors; they are not charged with the same constitutional functions, and their decisions are more often scrutinized by—and in—courts."). It is also an unfair responsibility to place on law enforcement rangers as they are expected to maintain their expertise as police officers, obtain the separate expertise of federal prosecutors, and fairly assess the policing decisions of their officer colleagues. The government does not attempt to explain how such a system could possibly result in "legal proceedings [that] appear fair to all who observe them." *See United States v. Urutyan*, 564 F.3d 679, 686 (4th Cir. 2009) (quoting *Wheat v. United States,* 486 U.S. 153, 160 (1988)).

2. The Government Wrongly Interprets its Statutory Duty as a Blank Check to Determine Who Executes its Prosecutorial Responsibilities.

In acknowledging its statutory duty to "conduct[] the litigation on behalf of the United States, specifically criminal prosecutions[,]" the government points to the statutes' silence on how

the USAO' s responsibilities are executed. ECF No. 20, at 2. In the face of what it views as statutory silence, the government argues it retains the authority to determine how its duties are executed—and who executes them. *Id.* Such limitless interpretation is belied by the authorizing statutes, which specifically explain who may execute DOJ and USAO duties.

Indeed, if determining how the DOJ's "responsibilities are supposed to be executed" includes allowing the NPS to perform core prosecutorial duties such as finalizing charging decisions; producing discovery; representing the United States in court; engaging in plea negotiations; and litigating motions, then the government is undisputedly delegating the DOJ's authority to a different executive branch agency. If the purported "statutory silence" allows this delegation, then the USAO has license to direct *any* person to fulfill its prosecutorial duties. Under the government's interpretation of its governing statutes, then, Rule 180(b)(4) serves not as a vehicle for such delegation but as a court-imposed limitation on its otherwise boundless power to allow anyone at all to litigate on behalf of the United States.[1] This in no way reflects the reality of the authorizing statutes' text or purpose.

Unless otherwise authorized by law, Congress unambiguously limited the "delegation of authority" of "the performance" of any such "function of the Attorney General" to agents of the DOJ. *See* 28 U.S.C. § 510. The Rule 180 NPS representatives are external to the DOJ, and the government may not delegate its authority under the guise of supervising the execution of its duties. In arguing that the statute does not hinder it from delegating the execution of its responsibilities outside the DOJ, the government neglects to acknowledge the specific examples showing how Congress outlines the DOJ's delegation of authority as an exception to its duty in specific circumstances. *See United States v. Libby*, 429 F. Supp. 2d 27, 33 (D.D.C. 2006) (interpreting the unambiguous statutes outlining how the DOJ may properly delegate its authority).

[1] This logical endpoint of the government's statutory argument is, of course, at odds with its reliance on Rule 180 as allowing its practice here.

**B. None of the Cases Cited by the Government Resolve the Issues Pending Before this Court.**

In an attempt to justify its broad interpretation of statutory authority, the government cites various cases that are non-dispositive of the present legal issues. ECF No. 20, at 2–4. The only case the government cites with binding authority is *United States v. Broers*, 776 F.2d 1424–25 (9th Cir. 1985) (per curiam) which is wholly unrelated to the legal issues raised here.[2] In *Broers*, the Ninth Circuit found the record failed to support a due process claim where the appellant took issue with a single question asked by a lay prosecutor employed by the United States Forest Service. Thus, *Broers* stands for the proposition that the presence of a non-attorney prosecutor is not inherently unconstitutional. *See id.* at 1425. This has nothing to do with the statutory and rule-based issues raised here.

The remaining cases the government cites to support its delegation are nonbinding. It primarily relies on an out-of-circuit, 1974 district court case, *United States v. Glover*, that it argues decides Mr. Anderson's legal issue. 381 F. Supp. 1139 (D. Md. 1974); ECF No. 20, at 3 ("Further, Defendant's argument was already litigated in [*Glover*.]"). But the district court in *Glover* found it was obligated to affirm the defendant's conviction who challenged the government's use of a non-attorney prosecutor on appeal. *Id.* at 1146.

Notably, despite affirming the conviction on appeal, the court in *Glover* was concerned by the government's practice and stated its belief that the United States should be represented by an attorney "in any case in which a sentence of confinement is imposable[.]" *Id.* Because "the overwhelming majority of American citizens have contact with the criminal justice system only in reference to minor offenses" the *Glover* court agreed that "justice, and its appearance, would be better served" if the USAO prosecuted criminal proceedings before federal magistrate courts. *Id.* Unlike the accused in *Glover*, Mr. Anderson challenges the government's delegation pretrial. Thus, this Court has the opportunity to address the distorted appearance of justice in the first instance.

---

[2] The government acknowledges as much, as it does not attempt to rely on *Broers* for any legal proposition.

To advance its interpretation to support the present delegation, the government points to case analysis interpreting a Supreme Court decision, *United States v. Crosthwaite*, 168 U.S. 375 (1897), as establishing the authorizing statutes exist for the government's benefit. But such an argument misunderstands the point of *Crosthwaite* which was to protect the United States treasury from unnecessarily compensating certain government actors. *Id.* at 381.

It further relies on two cases cited in *Glover*, a Sixth Circuit case—*United States v. Denton*, 6th Cir., 307 F.2d 336 (6th Cir. 1962), and a Fifth Circuit case—*Home News Publishing Co. v. United States,* 329 F.2d 191 (5th Cir. 1964)—to confirm 28 U.S.C. § 547 is not jurisdictional as discussed on appeal. The difference in procedural posture is critical because instead of determining whether the USAO properly delegated its prosecutorial responsibilities pretrial, the *Glover* court's focus was whether the USAO's absence violated the defendant's substantial rights such that the conviction had to be invalidated.

The government's reliance on *Home News Publishing Co.* and *Denton* merit closer review as both cases are distinguishable. In *Home News Publishing Co.*, the Fifth Circuit affirmed a conviction and rejected the defendant's challenge to the participation of two Department of Labor *attorneys* in his prosecution. 329 F.2d at 192-93. It did so by relying on a record where the USAO handled "all pleadings and preliminary motions" and "invited objection from counsel for the defendants" before allowing two attorneys with the Department of Labor assist in the trial. *Id.* Similarly, the defense did not object when the AUSA who initiated the case and conducted the trial in *Denton*, involved an IRS attorney to participate at the start of trial. Unlike in those cases, this record is almost completely devoid of participation by an AUSA as non-attorney police officers handled the pleadings, preliminary motions, and made court appearances. Nor was Mr. Anderson invited to object prior to the law enforcement officers' participation.

Neither do the government's additional citations to two cases within this district help further its argument. First, the defendants proceeded *pro se* in both *United States v. Downin*, 884 F. Supp. 1474 (E.D. Cal. May 9, 1995), and *United States v. Barker*, 3:25-po-00033-DMC-1, 2025 U.S. Dist. LEXIS 214362 at *9 (E.D.Cal October 30, 2025). In reversing the conviction in

*Downin*, based on the denial of counsel, the district court rejected the defendant's challenge to the government's representation by a non-attorney. It appears this challenge might have been raised for the first time on appeal by the defendant who could not read and required the assistance of his wife at trial. Unlike here, the defendant argued that a lay-prosecutor violated (1) his due process rights, and (2) local rule 180's requirement that all litigants be barred attorneys. *Downin*, 884 F. Supp. at 1480-81. *Downin* cited *Broers* to deny the inherent due process claim, and at no point did it analyze the statutory issue raised here.

The nonbinding *Barker* decision is even less relevant as the magistrate court denied the *pro se* defendant's motion to dismiss challenging, in part, that the lay-prosecutor acted beyond its lawful capacity under Rule 180. 2025 U.S. Dist. LEXIS 214362 at *9. Although the defendant raised the objection pretrial, the record does not show the statutory and appearance of justice arguments briefed here. Indeed, the *Barker* decision merely confirmed whether the lay-prosecutor complied with the requirements under Rule 180(b)(4) as opposed to analyzing if the government impermissibly delegated its statutory authority.

**C. The Government Ignores the Legal Standard Governing Disqualification and Misses the Mark by Overlooking How Police Prosecution Distorts the Appearance of Justice.**

The government argues Mr. Anderson fails to provide any legitimate basis to disqualify specific Rule 180 NPS officers who have appeared in this case. ECF No. 20, at 4. Again, that is not Mr. Anderson's argument. Given the USAO's impermissible delegation of authority, Mr. Anderson seeks the disqualification of the NPS from prosecuting this case. Allowing active law enforcement officers within the NPS to continue representing the United States in this prosecution distorts the appearance of justice.

In confusing the issues, the government disregards the legal standard under which a trial may exercise its supervisory authority to disqualify counsel when needed to "maintain public confidence in the legal profession and assist[] in protecting the integrity of the judicial proceeding." *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 721 (7th Cir. 1982); *see Urutyan*, 564 F.3d at 686 ("The paramount concern is the judiciary's 'independent interest in

ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings *appear fair to all who observe them*.'" (quoting *Wheat v. United States*, 486 U.S. 153, 160 (1988) (emphasis added)). Disqualification is not only necessary to protect the integrity of the criminal proceedings, but also to direct the government to fulfill its statutory duties by executing its prosecutorial responsibilities.

What the government labels as a "parade of horribles," ECF No. 20, at 4, is a list of numerous, real examples of what happens when the DOJ allows an external agency to prosecute individuals with the full power of the federal government and without any of the safeguards built into the criminal legal system.[3] It is these examples that further show why disqualification is the most appropriate remedy to address the issues created under the USAO's current practice in Yosemite National Park.

Indeed, that uniformed police officers may both arrest and prosecute an individual without even changing into business attire to differentiate between the two roles distorts the appearance of justice. How can an individual assume he will receive a fair trial when the same officer that charged him could also then exercise prosecutorial powers over his case?[4]

The government also confuses the subpoena example and misunderstands the established agreement reached between the Federal Defender's Office and law enforcement rangers to accommodate the NPS's service preference. Indeed, as explained in the Declaration of Vincent

---

[3] A parade of horribles is "a litany of detrimental or retrograde consequences that will, in the view of an opponent of some proposed action, occur if the action is taken." Black's Law Dictionary (12th ed. 2024). The government conflates hypothetical consequences of a proposed policy with actual consequences of a current practice.

[4] The government misreads the declaration by undersigned counsel to concede limited situations in which it would be appropriate for law enforcement officers to appear in uniform when representing the United States. Indeed, in the email exchange cited, undersigned counsel acknowledged that while Rule 180 officers may have worn uniforms in the past, that seemed to be the exception, and moving forward—the defense requested "that law enforcement rangers not appear in uniform when acting under Rule 180 to avoid any confusion between the LEO role and prosecutor role." ECF No. 19, at 17 (citing Declaration of Lisa N. Lumeya, ¶ 3). Despite attempting to resolve this concern, the government continued to allow law enforcement officers to wear its uniforms when representing the United States. The declaration of Declaration of Jonathan McKinney, ¶ 3–4, represents just one such example to explain how even the issue of attire shows how police prosecution impacts the appearance of justice. ECF No. 19, at 8.

Lee, the NPS law enforcement rangers preferred a standardized process of email service. *See* Declaration of Vincent Lee. And the more recent request by the NPS to include the law enforcement ranger email address on messages effectuating agreed-upon electronic service of subpoenas under seal is yet another example of why instructing police officers to play the role of both officer and prosecutor blurs lines and undermines confidence in judicial proceedings.

In conceding that the USAO chooses not to follow its standard discovery procedures in favor of the NPS's own procedure, the government again misses the point. It is for the government to determine its own discovery production procedure so long as it complies with its obligations to produce timely discovery. The point here is that in straying from its standard procedure in Yosemite misdemeanor cases, the government abdicates its discovery obligations which leaves an external agency to fulfill the USAO's duties. *See* Declaration of Julie Butler. Importantly, Mr. Anderson cites multiple cases—*including his own*—for the purpose of highlighting that the government's abdication of its discovery obligations is not working. This process has resulted in discovery violations cited in Mr. Anderson's motion.[5]

As for the issue of supervision, it is difficult to square the government's concession regarding its lack of involvement in Mr. Anderson's motions, plea negotiations, and representations in court with its argument that Mr. Anderson raises "bald assertions" unsupported by fact. ECF No. 20, at 9. Indeed, it is the government that skips over Mr. Anderson's analysis to arrive at a conclusion "devoid of any factual support." *Id.* The government blatantly disregards the Rule 180 NPS representative's failure either to read or understand Rule 430.1 and makes no attempt to explain its failure to correct—or supervise—this fundamental error. Nor does the government discuss the late discovery production or explain why the practice of police prosecution does not distort the appearance of justice. Its broad arguments that the NPS representatives are required under Rule 180 to be supervised also ignores that "supervision" is defined under the local

---

[5] It is troubling that the government points to *O'Brien* to argue neither an AUSA nor a law enforcement officer would have known about the body-worn camera footage from the reporting officer. Ignoring that it would have faced opposition in trying to admit untimely discovery into evidence, the government attempts to argue it somehow assisted the defense in stipulating to the admission of late discovery that the defense found favorable to its position.

rule to only require USAO employees "are available to answer questions[.]" L.R, 180(b)(4)(A)(iv). Under the government's current practice, the USAO allows the NPS to handle Yosemite misdemeanor prosecutors and rarely intervenes. *See* Exhibits A-B.

Last, the government does nothing to explain why the lack of a standardized system of ethics does not undermine public confidence in judicial proceedings, nor how four hours of training every twenty-four months could ever prepare any non-AUSA to execute prosecutorial responsibilities as required by statute. Instead of explaining why its system does not distort the appearance of justice, the government doubles down that this Court lacks the legal authority to enforce the DOJ's policies outlining its internal standards for the United States's prosecution. This further proves Mr. Anderson's point: a system in which an agency external to DOJ may prosecute individuals on behalf of the United States, free from enforcement of internal or external ethical obligations, simply cannot be upheld to meet the appearance of justice. The only remedy is to disqualify the NPS and require the USAO to fulfill its statutory duty.

## II. CONCLUSION

Based on the foregoing, Mr. Anderson respectfully requests that this Court find the United States unlawfully delegated its authority outside the DOJ and disqualify the NPS from further prosecutorial action.

Respectfully submitted,

HEATHER E. WILLIAMS
Federal Defender

Date: August 10, 2026

*<u>/s/ Lisa Ndembu Lumeya</u>*
LISA N. LUMEYA
Assistant Federal Defender
Attorney for Defendant
GAVIN ANDERSON